IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 22-200 |
| | ) |
| ADAM BIES | ) |

SENTENCING MEMORANDUM

AND NOW comes the United States of America, by and through its attorneys, Eric G. Olshan, United States Attorney for the Western District of Pennsylvania, and Jeffrey R. Bengel, Assistant U.S. Attorney for said district, and files the following sentencing memorandum.

On August 8, 2022, agents with the Federal Bureau of Investigation executed a federal search warrant at the residence of former President Donald J. Trump. The following day, the defendant, Adam Bies posted to his Gab account: "Is it time for Civil War yet? Seriously, how much longer before we finally do what needs to be done?"

The day after his call for civil war, Bies made a series of threats on Gab against the lives of FBI agents. On August 10, for example, he wrote: "HEY FEDS. We the people cannot WAIT to water the trees of liberty with your blood. I'll be waiting for you to kick down my door." Again on August 10, he threated that "[e]very single piece of shit who works for the FBI in any capacity, from the director down to the janitor who cleans their fucking toilets deserves to die. You've declared war on us and now it's open season on YOU."

The next day, August 11, it was reported that a man had been killed after attacking the FBI building in Cincinnati and raising a gun toward law enforcement officers. *See, e.g.*, Elisha Fieldstadt et al., *Armed man who was at Capitol on Jan. 6 is fatally shot after firing into an FBI field office in Cincinnati*, (last updated Aug. 11, 2022, 8:24 P.M.), *available at*

1

https://www.nbcnews.com/news/us-news/armed-man-shoots-fbi-cincinnati-building-nail-gun-flees-leading-inters-rcna42669. Like Bies, this man had "posted in recent days about his desire to kill FBI agents after former President Donald Trump's Mar-a-Lago residence was searched." *Id.* For his part, Bies was posting that same day that, "if you work for the FBI, then you deserve to DIE." Perhaps more troubling, Bies was publicly accepting that he would die as the result of a violent confrontation in which he tried to kill members of law enforcement. He wrote:

> I'm ready for the inevitable. Once you accept reality for what it is instead of what you want or to be you can move on with your life and get prepared for the inevitable outcome. I already know I'm going to die at the hands of these piece of shit child molesting law enforcement scumbags. My only goal is to kill more of them before I drop. I will not spend one second of my life in their custody.

The next day, August 12, Bies appeared to be fixated on the idea that the FBI would come to speak with or arrest him, and that he would kill the agents who did so. "Come and get me you piece of shit feds," he posted. "I am going to fucking slaughter you." And again: "Come and get me you piece of shit feds. I can't wait to watch you bleed out you pedophile scumbags. Every single one of you deserve a painful death."

On the evening of August 12, around 10:20 p.m., agents with the FBI obtained a federal arrest warrant for Bies and a federal search warrant for his residence near Mercer. These warrants were executed before midnight on August 12, with the aid of a SWAT team. The government expects that the evidence will show that the SWAT team surrounded Bies' Mercer home, with at least three vehicles parked directly in front of the house flashing red and blue lights. They called a phone number that they believed was associated with Bies and attempted to call him out of the home with a PA system. Receiving no answer, agents physically breached the door. They continued to call for Bies over the PA system for 30 to 40 minutes. After that time, when Bies

ultimately appeared, he exited his home onto a side porch holding a long-gun or rifle. He was instructed by SWAT officers and the officer speaking over the PA system to put down the gun. Bies complied and was taken into custody.

Bies was ultimately charged by a grand jury in the Western District of Pennsylvania with seven counts of making interstate threats, in violation of 18 U.S.C. § 875(c), and seven counts of retaliating against federal officers by threat, in violation of 18 U.S.C. §§ 115(a)(1)(B) and 115(b)(4). After Bies pled guilty to all fourteen counts, the Probation Office prepared a Presentence Investigation Report which calculated Bies' sentencing guideline range as 30 to 37 months, based on a total offense level of 19 and criminal history category of I. *See* PSR (Doc. No. 47) ¶ 57. The offense level was based on enhancements under U.S.S.G. § 2A6.1(b)(2), for two or more threats; U.S.S.G. § 2A6.1(b)(1), for conduct evidencing an intent to carry out a threat; and U.S.S.G. § 2A6.1(b)(5), for a public threat with a substantial risk of inciting others. In his position with respect to sentencing, Bies disputes the application of the final two enhancements and requests a sentence of time served. *See* Def.'s Position with Respect to Sentencing (Doc. No. 50). The United States submits that a sentence of 30 to 37 months of imprisonment is appropriate in this case.

First, the Probation Office has correctly calculated Bies' offense level and guideline range. As the Presentence Investigation report observes with respect to the enhancement under U.S.S.G. § 2A6.1(b)(5), a number of Bies' public posts refer to collective action—"how much longer before we finally do what needs to be done?"; "You've declared war on us and now it's open season on YOU." *See* PSR (Doc. No. 47) at ¶ 25. What's more, during the same week that Bies made his threats, at least one other individual had attacked the FBI, which was then grappling with increased

threats against its agents in the days after the search at Mar-a-Lago. In that context, there was a substantial risk that Bies' public threats would incite similar threats from others—and Bies would have known that.

The Probation Office has also correctly applied the enhancement under U.S.S.G. § 2A6.1(b)(1) for conduct evidencing an intent to carry out a threat. "The applicability of this enhancement 'does not depend on the defendant's actual intent, which could exist regardless of whether any actions were taken toward carrying it out; rather it depends on whether or not the defendant engaged in conduct from which the court permissibly infers such an intent." *United States v. Miah*, Case No. 21-cr-110-WSH (Doc. No. 317) at 8 (W.D. Pa. Sept. 19, 2022) (quoting *United States v. Berndt*, 127 F.3d 251, 259 (2d Cir. 1997)). To warrant application of the enhancement, the defendant must engage in some overt act. *See United States v. Brodie*, 824 F. App'x 117, 121 (3d Cir. 2020).

By the evening of August 12, 2022, Bies had posted several times about his desire for a violent confrontation with FBI. Bies anticipated that agents would come to his home. Then, Bies would "fucking slaughter" them, "watch [them] bleed out," and "water the trees of liberty with [their] blood," before ultimately "[dying] at the hands of [the] piece of shit child molesting law enforcement scumbags." That night, FBI agents arrived at his home. The evidence will show that Bies ignored more than thirty minutes of phone calls and messages over a PA system before emerging onto the porch with a long-gun—evidently to do *exactly* what he had threatened to do. Fortunately, at the last possible second, Bies relented and put down his weapon. But before that, he engaged in conduct evidencing an intent to act on his threats. For that reason, the 6-level enhancement in U.S.S.G. § 2A6.1(b)(1) applies.

In arguing otherwise, Bies focuses on what he did not do—i.e., he did not single out any individual FBI agents, travel to FBI or its agents' homes, acquire new weapons, make threatening communications from prison, or have prior convictions. *See* Def.'s Position with Respect to Sentencing (Doc. No. 50). But "[w]hat Defendant did not do . . . is not necessarily dispositive." *Miah*, Case No. 21-cr-110 (Doc. No. 317) at 8. That is especially true here, where there is such a close fit between what Bies threatened to do—kill any FBI agents who arrived at his home—and what he actually did—brought a rifle to the door once the FBI agents arrived.

Under these circumstances a sentence of 30 to 37 months is necessary to achieve the goals of 18 U.S.C. § 3553(a). By his threats, and by his conduct on the night of his arrest, Bies created an extremely dangerous situation that could easily have resulted in tragedy. This would have been a tragedy solely of Bies' design, unfolding in the way that he outlined in his Gab posts. The fact that that tragedy did not occur is due in no small part to the expertise and bravery of the responding FBI agents and law enforcement officers that Bies had threatened. And everyone involved is fortunate that, at the last possible second, Bies made the right decision and put down his weapon. But a serious sentence, within the applicable guideline range of 30 to 37 months, is necessary to reflect the seriousness of Bies' offense and the needless danger it posed to all involved.

Respectfully submitted,

ERIC G. OLSHAN
United States Attorney

s/ Jeffrey R. Bengel
JEFFREY R. BENGEL
Assistant U.S. Attorney
DC ID No. 1018621